Kathy A.F. Davis (#4022)
K. Tess Davis (#15831)
Stephen K. Kaiser (#18146)
ASSISTANT ATTORNEYS GENERAL
Derek Brown (#10476)
UTAH ATTORNEY GENERAL
1594 W North Temple, 3rd Floor
Salt Lake City, Utah 84116
Telephone: (801) 537-9801
kathydavis@agutah.gov
kaitlindavis@agutah.gov
skkaiser@agutah.gov

*Attorneys for Plaintiff State of Utah and
the Utah Counties*

## IN THE UNITED STATES JUDICIAL DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KANE COUNTY, UTAH (2), (3) and (4), a Utah political subdivision; and STATE OF UTAH,<br><br>　　Plaintiffs,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>　　Defendant,<br><br>SOUTHERN UTAH WILDERNESS ALLIANCE, ET AL.,<br><br>　　Defendant-Intervenors. | **THE STATE OF UTAH'S AND THE UTAH COUNTIES' OPPOSITION TO THE UNITED STATES' MOTION FOR AN ORDER TO ENFORCE THE PROTECTIONS OF THE QUIET TITLE ACT**<br><br>**Case Nos. 2:10-cv-01073**<br><br>2:11-cv-1043　　2:11-cv-1045<br>1:12-cv-0105　　2:12-cv-0423<br>2:12-cv-0424　　2:12-cv-0425<br>2:12-cv-0426　　2:12-cv-0428<br>2:12-cv-0429　　2:12-cv-0430<br>2:12-cv-0434　　2:12-cv-0447<br>2:12-cv-0451　　2:12-cv-0452<br>2:12-cv-0461　　2:12-cv-0462<br>2:12-cv-0466　　2:12-cv-0467<br>2:12-cv-0471　　2:12-cv-0472<br>　　　　2:12-cv-0477<br><br>Judge: Hon. Clark Waddoups<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiffs the State of Utah ("State") and the Utah counties in the above-captioned matters (the "Counties") (collectively, "Plaintiffs") respectfully submit their Opposition to Defendant United States' Motion For An Order To Enforce The Protections Of The Quiet Title Act, 28 U.S.C. § 2409a(b) (ECF 824) ("Motion").

## REQUESTED RELIEF

The Motion should be denied. First and foremost, the Court must deny the Motion in most of the title suits until it confirms that it has subject matter jurisdiction. Second, the United States has no "possession or control" of the States' and Counties' rights-of-way that can be "disturbed" in the property at issue. And third, should the Court intend to consider the Motion, in whole or in part, Plaintiffs must be allowed to conduct focused discovery from the United States to identify the specific roads and rights-of-way that will be subject to the Court's order.

Moreover, a specific order binding the United States would be necessary to ensure that a responsible official of the United States (not counsel, Harry Barber, nor Scott De la Vega[1]) agrees that the United States will maintain, repair and assume all liabilities for the roads for whatever length of time "the United States [continues to enjoy and exercise] the rights of ownership over the real property in question so long as the corresponding litigation remains pending, plus sixty days." Motion at 2. Plaintiffs respectfully request the Court to hold oral argument on the Motion.

Separate from the merits of the Motion, the Court should note that the United States now expressly or implicitly disputes title to all of the rights-of-way in the title suits captioned above.

---

[1] Mr. Barber, the Manager of the Bureau of Land Management ("BLM") Paria River District, has repeatedly provided evasive testimony on the stand. Mr. De la Vega was a witness chosen by the United States to testify at a recent hearing and he lacked knowledge of the relevant facts.

2

The Motion states that the United States now claims "possession or control" of all of the rights-of-way in the title suits, and expressly or implicitly admits that the Court has subject matter jurisdiction. The United States cannot seek an order under the Quiet Title Act unless the Court has jurisdiction. Nevertheless, Plaintiffs expect the United States to continue to make irreconcilable arguments that the Court lacks subject matter jurisdiction for lack of a title dispute, but that the Court can nonetheless enter an order under the Quiet Title Act to continue the United States' "possession or control" of the roads.

## BACKGROUND

### A. Plaintiffs' Roads Serve The Public Good.

Plaintiffs' roads are "a good thing." *S. Utah Wilderness All. v. BLM*, 425 F.3d 735, 741 (10th Cir. 2005) (citation omitted) ("*SUWA*"). They facilitate "the settlement of the country, and benefit the neighborhood, and in both particulars they further a general policy of the federal government. But they also tend to increase the value of the public lands, and for this reason are favored." *Id.* (cleaned up).

As much or more than any other state, the State's and Counties' roads serve as critical lifelines connecting towns and cities in Utah. Many of these roads, some 12,000 segments in the title suits, cross federal land and were granted to the State and Counties by the congressional land grant known as R.S. 2477. "[B]ecause most of the transportation routes of the West were established under R.S. 2477, the counties assert[] western states rely upon R.S. 2477 rights-of-way as major components of [their] transportation systems." *Kane Cty. v. United States*, No. 2:10-cv-1073, 2024 U.S. Dist. LEXIS 142312, at *10 (D. Utah Aug. 9, 2024) (cleaned up).

Unfortunately, how "the United States has addressed R.S. 2477 roads in Utah is different from how it has addressed the same type of roads in states with little federal land." *Id.* at 12.

3

"When faced with R.S. 2477 claims in North Dakota, the United States disclaimed any adverse interest in various roads, thereby recognizing the counties' claim to title." *Id*. In Utah, on the other hand, the United States has refused to acknowledge the State's and Counties' roads – even where the BLM had previously made an administrative determination that the road crosses an R.S. 2477 right-of-way, such as for the Skutumpah Road.[2] *See SUWA*, 425 F.3d at 788.

### B.    The Facts Alleged Do Not Support The United States' Motion.

On December 6, 2024, the United States filed its Motion in all of the pending title suits (active and stayed) because "[r]ecent events in one of the cases, *Kane County (2)* . . . have made clear that Plaintiffs are failing to abide by the constraints and limitations imposed upon them by the Quiet Title Act, 28 U.S.C. § 2409a(b). This motion is brought to enforce those protections." Motion at 2.

As it turns out, the offending "recent events" are actually limited to the installation of a culvert "on the House Rock Valley road (K6000) – one of the road claims that remains at issue in the Kane (2) case." *Id*. "Despite the United States' clearly articulated position, Kane County nonetheless unilaterally performed this road work … in violation of the Quiet Title Act. . . . By refusing to heed the United States' instructions prohibiting unilateral action, Plaintiffs have disturbed the United States' possession or control of this property." Motion at 3.

There are two fundamental problems with the United States' Motion. The first is that it misstates the facts regarding the culvert installed on the K6000 House Rock Valley Road, which it repeatedly calls a unilateral act. Motion at 3. The only unilateral action involved was the United States' decision to ignore Kane County's repeated requests regarding the culvert for five

---

[2] The singular exception in the last 20 years occurred in 2019 when the BLM allowed Garfield County, Utah, to chip seal seven miles of the 66-mile-long Burr Trail Road. *See S. Utah Wilderness All. v. DOI*, 44 F.4th 1264 (10th Cir. 2022).

4

years. The Grand Staircase-Escalante National Monument Management Plan did not prohibit Kane County's installation of the culvert at the Buckskin Wash, just as it did not prohibit the BLM from realigning 1,200 feet of road and installing the same type of box culverts on the Whitehouse Road just a few miles away. *See* Harry Barber Press Release (Kane County (2), Exhibit 966).

When the United States and an R.S. 2477 claimant disagree, they should "resort to the courts." *SUWA*, 425 F.3d at 748. This is because where "rights-of-way and easements are concerned, one party cannot serve as the sole judge of scope and extent, or as the sole arbiter of what is reasonable and necessary." *Id*. at 747 (cleaned up). The State and Kane County followed the law and resorted to this Court.

> The court held an evidentiary hearing on August 21–22, 2024, where Kane County put on evidence about the need for a culvert at Buckskin Wash on K6000 to address public safety and maintenance issues when flood waters cover the road. Kane County further put on evidence about the history concerning culvert installations, and how it is a necessary part of the County's standard maintenance practices. *No contrary evidence was presented* about the need for a culvert at Buckskin Wash or that Kane County has a long history of installing culverts as part of its maintenance program to keep roads in operable condition.

Resolution of Motion for Other Relief (ECF 801), at 1 (emphasis added).

The second and more fundamental problem with the Motion is that the United States generally has not filed an answer or response in the captioned cases. Where it has responded, it contends the Court lacks subject matter jurisdiction (no title dispute) for hundreds of roads at a time. In fact, across the last fourteen years the United States has repeatedly moved to dismiss the K6000 House Rock Valley Road and hundreds of others for lack of subject matter jurisdiction, ostensibly because it does not dispute the State's and Kane County's title. *See Kane County (2)*, ECF 32; ECF 65; ECF 92; ECF 497; ECF 671.

5

On August 9, 2024, the Court denied the United States' most recent motion to dismiss, including for the K6000 House Rock Valley Road and the G9000 Hole-in-the-Rock Road in Garfield County. *Kane Cty. v. United States*, No. 2:10-cv-1073, 2024 U.S. Dist. LEXIS 142312, at *116 (D. Utah Aug. 9, 2024). Nevertheless, the United States remains committed to its position that there is no title dispute for hundreds of roads, if not more, and that the court lacks subject matter jurisdiction. The United States even mentions the Court's disputed title decision as "a possible issue for appeal." Motion, at 7.

## **RELEVANT LAW**

The United States requests the Court to enter an order enforcing Section (b) of the Quiet Title Act, which provides: "The United States shall not be disturbed in possession or control of any real property involved in any action under this section pending a final judgment or decree, the conclusion of any appeal therefrom, and sixty days[.]" 28 U.S.C. § 2409a(b). This language protects the United States from being displaced—disturbed—in its possession or control of property involved in a title suit until sixty days after any final judgment or appeal. The section protects the United States in its ongoing functions and operations conducted on specific property to which title is disputed.

The Quiet Title Act further provides: "No preliminary injunction shall issue in any action brought under this section." 28 U.S.C. § 2409a(c). As the Court considers the Motion, it should determine whether the requested declaratory relief is, in effect, a preliminary injunction that is prohibited by the Quiet Title Act. The State and Counties raise this issue because the requested relief would entirely flip the status quo on the roads and, in effect, enjoin the State and Counties from maintaining and repairing the roads for years to come. In the interim, the roads must be cared for by a responsible government.

## ARGUMENT

**A. The Court Lacks Subject Matter Jurisdiction Over Any Road Until The United States Files An Answer Admitting A Title Dispute Under the Quiet Title Act.**

The United States requests the Court to enforce Section (b) of the Quiet Title Act, but it has not responded to most of the State's and Counties' complaints in the above captioned cases. Where it has responded, it has argued that the Court lacks subject matter jurisdiction for hundreds of roads. *See Kane County (2)*, ECF 92, ECF 497; *Garfield County (1) and (2)*, Nos. 11-cv-1045, 12-cv-478, ECF 135.

The United States cannot have it both ways – it cannot tell the Court that it does not have subject matter jurisdiction under the Quiet Title Act and at the same time ask for relief under the same Act. The United States, "as the party invoking the jurisdiction of the court" to enter an order, must show "the existence of jurisdiction." *Wilshire Oil Co. v. Riffe*, 409 F.2d 1277, 1282 (10th Cir. 1969). The Motion must be denied until the United States confirms the Court's subject matter jurisdiction over the affected roads.

**B. The United States Cannot Be Disturbed In Its "Possession Or Control" Of Property If It Never Took "Possession Or Control" Of The Property.**

Section (b) confirms that the United States "shall not be disturbed in its possession or control of the property." 28 U.S.C. § 2409a(b). If the United States was not "in possession or control" of the property when the title suits were filed, then it cannot be "disturbed" in its possession or control now. Section (b) does not automatically apply in every Quiet Title Act lawsuit. Some title suits involve circumstances under which a party sues to perfect an existing title to property it possesses and controls, such as where there is a cloud on title. *See Kane Cty.*, 2024 U.S. Dist. LEXIS 142312, at **34-36, 65-76. The plaintiff may be in possession and control of the property and the title suit serves to resolve competing rights or an interference with

the peaceable enjoyment of the property. *Id*. Section (b) protects the United States in the types of title suits filed as in the nature of an action for ejectment. *See McClellan v. Kimball*, 623 F.2d 83, 86 (9th Cir. 1980).

This is a significant issue in these lawsuits because the disputed property involves a right-of-way. "A right of way is not tantamount to fee simple ownership of a defined parcel of territory. Rather, it is an entitlement to use certain land in a particular way." *SUWA*, 425 F.3d at 747. "By its express terms, R.S. § 2477 grants a right-of-way, a species of easement across the public lands of the United States." *United States v. Garfield Cty.*, 122 F. Supp. 2d 1201, 1242 (D. Utah 2000). An easement is an "incorporeal right", which is a "nonpossessory" interest. *Judd v. Bowen*, 2017 UT App 56, ¶ 41, 397 P.3d 686, 699.

Using the United States' example of the K6000 House Rock Valley Road, how, exactly has the United States been in "possession or control" of the road when it has represented to the Court that it does not dispute the State's and Kane County's title? How does the United States have "possession or control" of the roads it does not maintain or repair?

**C. If The Court Intends To Issue An Order, The State And Counties Request Leave To Conduct Focused Discovery To Determine Where The Order Will Apply And Who Will Maintain And Repair The Roads.**

The State and Counties recognize the unique posture of these title suits, where most of the lawsuits are stayed and the United States has not filed an answer or response. However, the United States chose to blanket-file its Motion in all of the suits without attempting to explain where the order would apply or how it would work. Quite frankly, roads without the Counties' maintenance and repair would "disturb" the United States' ongoing operations, and the United States is, itself, incapable of maintaining and repairing the roads.

Using the example of the K6000 House Rock Valley Road, will the United States be under a mandatory obligation to maintain and repair the road until 60 days after the final appeal? Kane County installed the culvert to solve a demonstrated public safety problem. If the United States fails to keep the road passable, what good is the culvert?

If the roads in the title suits are left without maintenance and repair, the public's *and* the United States' ongoing operations will be seriously disturbed. Thus, the United States will have to agree, in any order, to maintain, repair and assume liability for each of the roads for which it now claims to have "possession or control."

Moreover, the State and Counties are entitled to know when, and through the exercise of what actions, exactly, the United States took "possession or control" of a road. "If the United States has been in continuous possession of the property to the date of its election to condemn or to retain possession and control, the date for determining the value of the just compensation due for the taking is the date when the United States first took possession, not the date when the Court adjudicates title." *United States v. Drinkwater*, 434 F. Supp. 457, 463 (E.D. Va. 1977), citing *United States v. Dow*, 357 U.S. 17, 22 (1958).

## CONCLUSION

Wherefore, Plaintiffs request the Court to deny the Motion. Should the Court believe it has jurisdiction to proceed, in whole or in part, Plaintiffs request the Court to hold oral argument regarding the Motion and grant Plaintiffs the opportunity to conduct discovery as warranted under the circumstances. As stated above, legalistic arguments by counsel for the United States, as presented in the Motion, cannot provide the Court or Plaintiffs with the facts necessary for the Court to enter an order binding Plaintiffs and the United States to a course of conduct, including maintenance, repair and liability, that will last for several years.

RESPECTFULLY SUBMITTED this 21st day of February, 2025.

UTAH ATTORNEY GENERAL'S OFFICE

/s/ Kathy Davis
Kathy A.F. Davis
K. Tess Davis
Stephen K. Kaiser
Assistant Attorneys General

*Attorneys for Plaintiffs State of Utah and the Utah Counties*